FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 06, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STORMY R.,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 1:19-CV-3167-JTR<br><br>ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 14. Attorney D. James Tree represents Stormy R. (Plaintiff); Special Assistant United States Attorney Katherine Bennett Watson represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, IN PART,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income in early 2016, alleging disability since February 23, 2011, due to hearing loss. Tr. 331, 352. Administrative Law Judge (ALJ) Ilene Sloan held a hearing on January 29, 2018, Tr. 46-87, and issued an unfavorable decision on June 19, 2018, Tr. 15-24. The Appeals Council denied Plaintiff's request for review on May 22, 2019. Tr. 1-

5. The ALJ's June 2018 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on July 23, 2019. ECF No. 1.

## STATEMENT OF FACTS

Plaintiff was born on October 12, 1995, and was 20 years old on the date of the disability application, February 23, 2016. Tr. 15, 331. She completed school through the 11th grade and had not earned a GED. Tr. 66, 353. The record reflects Plaintiff has held a couple of short-term jobs but has no past relevant work. Tr. 70-71, 352. Plaintiff's disability report indicates she has never worked. Tr. 352.

Plaintiff testified at the administrative hearing that she cared for her daughter and nephew, ages two and three, while her sister worked during the week. Tr. 68-69. She stated she was able to drive and completed household chores such as doing laundry, washing dishes and vacuuming the house. Tr. 69.

Plaintiff claims disability as a result of hearing loss, Tr. 352, and reported her hearing seemed to be getting worse, Tr. 72. She also testified she has problems with ear infections a couple of times a year, lasting a couple of days to a week each time. Tr. 72. Plaintiff reported she does not wear her hearing aids while enduring an ear infection. Tr. 72.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (9th Cir. 2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On June 19, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 23, 2016, the disability application date. Tr. 17.

At step two, the ALJ determined Plaintiff had the severe impairment of bilateral sensorineural hearing loss. Tr. 18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 18.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff could perform a full range of work at all exertional levels but with the following non-exertional limitations: she needs to avoid tasks requiring excessive social interaction, defined as being able to communicate with others face-to-face as long as the individual is in front of her and able to communicate through written communication, but would require work where listening and speaking is occasional; she needs work with no requirement to verbally give assignments and/or directions to others; she needs to avoid even moderate exposure to noise, defined as able to work in environments that are very quiet and quiet as those terms are defined in the Selected Characteristics of Occupations and the Dictionary of Occupational Titles; she needs to avoid even moderate exposure to hazards; she is able to perform work where she will not need to answer the phone or communicate via two-way radio or handset; and she can perform no work requiring fine hearing, such as work as a stenographer or musical producer. Tr. 18-19.

At step four, the ALJ found Plaintiff had no past relevant work. Tr. 22.

At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of fish cleaner, hospital cleaner and library page. Tr. 22-23.

///

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from February 23, 2016, the disability application date, through the date of the ALJ's decision, June 19, 2018. Tr. 23-24.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff specifically argues (1) the ALJ erred by failing to credit Plaintiff's testimony; and (2) the ALJ erred by failing to properly assess the medical opinions. ECF No. 13 at 1.

## DISCUSSION

A. **Plaintiff's Subjective Complaints**

Plaintiff contends the ALJ reversibly erred by failing to fully credit her testimony. ECF No. 13 at 4-11.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, Plaintiff's

statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. Tr. 19-20.

It appears the only precise rationale provided by the ALJ for rejecting Plaintiff's testimony in this case is that the objective medical evidence of record did not support the level of impairment claimed.[1] *See* Tr. 20-22.

In assessing a Plaintiff's testimony, an ALJ may consider whether the alleged symptoms are consistent with the medical evidence; however, an ALJ may not make a negative credibility finding solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006).

Defendant asserts the medical evidence; specifically, Plaintiff's audiological evaluations, the testimony of medical expert David R. Bruce, D.D.S., M.D., and the treatment notes of Amie R. Shah, M.D., did not support Plaintiff's allegations of disabling symptoms. ECF No. 14 at 5-9.

While the ALJ summarized Plaintiff's audiological evaluations and the medical opinions of Dr. Shah, Sally Rodgers, Au.D., Katie Bertneas, Au.D., Dr. Bruce, and the state agency medical consultants, Tr. 20-22, she failed to articulate what specific allegation of Plaintiff was undermined by these evaluations and reports.

The Ninth Circuit has determined that an ALJ errs "by making only a single general statement that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC determination], without identifying

---

[1] The ALJ specifically stated, "the medical findings do not support the existence of limitations greater than the above listed residual functional capacity." Tr. 20.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 6

sufficiently specific reasons for rejecting the testimony, supported by evidence in the case record." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quotation marks and citation omitted); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (holding "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony"). In *Brown-Hunter*, the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination," which "is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully . . . [to] ensure that the claimant's testimony was not arbitrarily discredited." *Brown-Hunter*, 806 F.3d at 494. The Ninth Circuit concluded "[b]ecause the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error." *Id.* (citation omitted).

Like the ALJ in *Brown-Hunter*, ALJ Sloan failed to identify how the summarized medical evidence specifically conflicted with Plaintiff's reported symptoms. The ALJ only generally stated that Plaintiff's allegations were not fully consistent with certain medical reports of record. This is not a valid, clear and convincing reason to discount subjective complaints.

In any event, even if this rationale for rejecting Plaintiff's testimony was deemed proper, the ALJ's decision fails to set forth any other distinct, valid reason for not according full weight to Plaintiff's testimony. Although the ALJ, in multiple places in her order, generally mentions that Plaintiff is a caretaker for her daughter and nephew, Tr. 21-22, the ALJ did not articulate in what way Plaintiff's childcare activities conflicted with her testimony, nor did the ALJ specifically indicate this was a reason to discredit Plaintiff's subjective symptoms. Accordingly, the ALJ's conclusion that the medical evidence did not support Plaintiff's level of impairment claimed would impermissibly be the sole reason

provided for finding Plaintiff less than fully credible in this case. *See Bunnell*, 347 F.2d at 345.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). This Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. However, based on the foregoing, the Court concludes that the rationale provided by the ALJ for failing to fully credit Plaintiff's testimony is inadequate. Therefore, Plaintiff's subjective symptoms must be reassessed on remand. On remand, the ALJ shall reconsider Plaintiff's statements and testimony and reassess what statements, if any, are not credible and, if deemed not credible, what specific evidence undermines those statements.

### B.    Medical Opinion Evidence

Plaintiff asserts the ALJ additionally erred by failing to properly consider the medical opinion evidence of record. ECF No. 13 at 12-20. Plaintiff specifically asserts the ALJ erred in assessing the weight owed to Plaintiff's audiologists, nonexamining medical expert Bruce, and nonexamining state agency medical professionals. ECF No. 13 at 12-20.

In a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*,

379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830; *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding a nonexamining doctor's opinion "with nothing more" does not constitute substantial evidence).

In weighing the medical opinion evidence of record, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must also set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter*, 806 F.3d at 492 (9th Cir. 2015). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

As indicated above, the ALJ's RFC determination found Plaintiff capable of performing a full range of work at all exertional levels but with the following non-exertional limitations: she needs to avoid tasks requiring excessive social interaction, defined as being able to communicate with others face-to-face as long as the individual is in front of her and able to communicate through written communication, but would require work where listening and speaking is occasional; she needs work with no requirement to verbally give assignments and/or directions to others; she needs to avoid even moderate exposure to noise, defined as able to work in environments that are very quiet and quiet as those terms are defined in the Selected Characteristics of Occupations and the Dictionary of Occupational Titles; she needs to avoid even moderate exposure to hazards; she is able to perform work where she will not need to answer the phone or communicate
///

via two-way radio or handset; and she can perform no work requiring fine hearing, such as work as a stenographer or musical producer. Tr. 18-19.

### 1. Sally Rodgers, Au.D.

In December 2015, audiologist Rodgers completed a "WorkFirst Documentation Request Form for Medical or Disability Condition." Tr. 431-433. Dr. Rodgers assessed bilateral moderately severe sensory hearing loss and opined Plaintiff would be unable to participate in any work. Tr. 431. Dr. Rodgers wrote that on-the-job communication would need to be close to the person speaking, facing the speaker, and in minimal background noise; an assistive device (such as a personal frequency-modulated (FM) assistive device) would help overcome difficulties of listening in noise or at a distance; and phone communication would be difficult. Tr. 431. She opined Plaintiff would need to use hearing aids fulltime as well as other assistive devices for alerting/telephone. Tr. 432.

The ALJ accorded Dr. Rodgers partial weight, finding little support for her conclusion that Plaintiff needed a personal FM system to communicate or that she would be unable to work any hours during a normal workweek. Tr. 22.

With respect to Dr. Rodgers, the Court finds her opinion did not state a requirement that Plaintiff use a personal FM system, but merely indicated it could be helpful to Plaintiff for listening difficulties. *See* Tr. 431. Dr. Rodgers later opined that Plaintiff would need to use hearing aids fulltime, Tr. 432, an opinion that is consistent with ME Bruce's testimony as discussed below. *See infra*. Plaintiff is correct, however, that the ALJ did not discuss Dr. Rodgers' opinion that on-the-job communication would need to be in minimal background noise. Tr. 431. Nevertheless, it is likely the ALJ incorporated this minimal background noise restriction in her RFC assessment by finding Plaintiff must avoid even moderate exposure to noise and only work in environments that are very quiet and quiet. Tr. 19. Finally, the Court agrees with the ALJ that the overall record does not support Dr. Rodgers' opinion that Plaintiff would be entirely unable to work.

### 2. Amie Shah, M.D.

In January 2015, treating audiologist Shah also completed a "WorkFirst Documentation Request Form for Medical or Disability Condition." Tr. 434-437. Dr. Shah also assessed bilateral moderately severe sensory hearing loss and opined Plaintiff would be unable to participate in any work. Tr. 434. Dr. Shah indicated Plaintiff had a lot of difficulty with communication; would need to be as close to the speaker as possible with no background noise; and has considerable difficulty communicating on the phone. Tr. 434. She opined Plaintiff would need to work with hearing and speech, use hearing aids, and use other assistive devices as needed for alerting and/or telephone. Tr. 435.

As with Dr. Rodgers, the ALJ accorded Dr. Shah partial weight, finding little support for the conclusion that Plaintiff would be unable to work any hours during a normal workweek. Tr. 22. The ALJ also believed Dr. Shah's form report, indicating an inability to work, Tr. 434, was contradicted by her contemporaneous treatment notes which stated "I do not believe she needs to be on disability long term with proper treatment," Tr. 442. Tr. 22.

While the Court does not believe Dr. Shah's note regarding long-term disability directly contradicts her contemporaneous opinion that Plaintiff would be unable to participate in any work, Tr. 434, 442, the Court finds the overall record does not support a conclusion that Plaintiff would be unable to perform any work. There is no evidence indicating Plaintiff is completely incapacitated as a result of her hearing limitations.

### 3. David R. Bruce, D.D.S., M.D.

Medical expert Bruce testified at the administrative hearing held on January 29, 2018. Tr. 52-66. Dr. Bruce stated Plaintiff suffers from bilateral hearing loss, right ear worse than the left. Tr. 53. He indicated an October 2017 audiologic study revealed Plaintiff had a speech reception threshold (SRT) of 75 decibels of loudness for Plaintiff to recognize a word in the right ear and an SRT of 65

decibels in the left ear. Tr. 54-55. Plaintiff recognized 80% of the words presented (word discrimination ability or WD) in the right ear and 68% in the left ear. Tr. 55. Based on the audiogram results, Dr. Bruce found that Plaintiff would not meet or equal a Listings impairment. Tr. 57. Although he noted the record showed a slight increase in hearing difficulty over time, Plaintiff was still well within the Listings. Tr. 60-61.

With respect to limitations, Dr. Bruce testified Plaintiff should wear hearing protection if she works in an environment with any noise greater than 85 decibels; she would work best in a quieter environment (library or office quiet); she should use functioning hearing aids; she would do better in up close face-to-face conversations or written communications; she would have difficulty dealing face-to-face with the public and others; she should have no extensive phone work or extensive verbal communication work requirements; and she would be restricted from any fine hearing work (i.e. work as a musician, music mixer or stenographer). Tr. 58-59. Dr. Bruce indicated that a personal FM assistive device could be of assistance, but it would not be nearly as good as using well-functioning hearing aids. Tr. 62.

The ALJ accorded "great weight" to the testimony of Dr. Bruce, finding it was consistent with the record as a whole which showed Plaintiff had difficulties with her hearing due to bilateral hearing loss, but that her audiological findings were within a range that did not meet the requirements for Listing 2.10, Plaintiff was able to hear at reduced levels, and she was capable of functioning in quieter environments and in situations in which she could be near or in front of the person with whom she was communicating. Tr. 21. The ALJ further noted Dr. Bruce's opined limitations were consistent with Plaintiff's hearing limitations overall, which would allow her to perform significant work-related activities in a quiet environment, and the notation of her treating physician that indicated Plaintiff did not need long-term disability assistance. Tr. 21.

The Court notes that whether a claimant is disabled within the meaning of the Social Security Act is a legal conclusion, based on both medical and vocational components, that is reserved for the ALJ. *See Edlund v. Massanari*, 253 F.3d 1152, 1156-1157 (9th Cir. 2001); *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000). Therefore, the Court finds Dr. Shah's remark regarding Plaintiff and long-term disability, Tr. 442, is of little value in this case.

Plaintiff appears to argue that the ALJ should have accounted for Dr. Bruce's opinion that "a FM device would be helpful outside of a noisy environment" in the RFC determination. ECF No. 13 at 19. However, the Court finds Dr. Bruce merely stated a personal FM system could be helpful to Plaintiff, he did not opine that Plaintiff was required to use such an assistive device in a work setting. *See* Tr. 62. Dr. Bruce's testimony is properly supported and not contradicted by other record evidence.

### 4. Katie Bertneas, Au.D.

In February 2017, audiologist Bertneas completed a "WorkFirst Documentation Request Form for Medical or Disability Condition." Tr. 465-468. Dr. Bertneas assessed bilateral moderate to severe sensory neural hearing loss and concluded Plaintiff would be able to work 31 to 40 hours per week. Tr. 465. Dr. Bertneas opined Plaintiff could potentially struggle with hearing on the phone, in noisy environments or from a distance; would need full-time use of her hearing aids; and would need six-month cleanings for her hearing aids. Tr. 465-466.

The ALJ accorded "great weight" to Dr. Bertneas' opinions, finding they were consistent with the record as a whole, which showed Plaintiff had some limitations due to her hearing loss, but overall was capable of performing work-related activities in quieter environments and in situations where she could be close to others she was communicating with. Tr. 21. The ALJ additionally noted Plaintiff was a full-time caretaker for her daughter and nephew and that Dr. Shah stated Plaintiff did not need to be on disability long-term. Tr. 21.

Plaintiff asserts "the ALJ failed to give any specific reason for so crediting [Dr. Bertneas'] findings." ECF No. 13 at 19. However, there is no requirement that the ALJ provide "sufficient reasons" for according weight to a medical professional, rather the Court reviews whether the ALJ has failed to provide legally sufficient reasons for **rejecting** evidence. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). While Dr. Bertneas' report is not consistent with the earlier, pre-disability application reports of the other audiologists, the Court is not convinced the overall record supports the opinions of the other audiologists that Plaintiff would be unable to perform any work. The evidence of record does not support a conclusion that Plaintiff is entirely incapable of performing any work as a result of her hearing limitations.

### 5. Nonexamining State Agency Medical Professionals

In March 2016, state agency reviewing physician Louis Martin, M.D., opined Plaintiff had communicative limitations which required her to avoid tasks requiring excessive social interaction, but she was not prevented from communicating with others with the use of hearing aids. Tr. 92. Dr. Martin further opined that Plaintiff should avoid settings with moderate background noise and that she may need an assistive device for alerts and alarms. Tr. 93. In May 2016, state agency reviewing physician Richard Alley, M.D., concurred with Dr. Martin's opinion. Tr. 100-101.

The ALJ accorded "great weight" to the state agency consultants' opinions, finding they were consistent with the record as a whole, which showed Plaintiff had some limitations due to her hearing loss, but overall was capable of performing work-related activities in quieter environments and in situations where she could be close to others she was communicating with. Tr. 21. The ALJ also again mentions Plaintiff's childcare activities and Dr. Shah's note regarding Plaintiff and long-term disability. Tr. 21.

///

As discussed, there is no requirement that the ALJ provide "sufficient reasons" for according weight to a medical professional. *Garrison*, 759 F.3d at 1020. Accordingly, Plaintiff's assertions regarding the weight accorded to the opinions of Drs. Martin and Alley are without merit. *See* ECF No. 13 at 17-18.

Based on the foregoing, it appears the ALJ provided adequate rationale for the weight accorded to the reports of medical professionals in this case. Nevertheless, as determined in Section A above, this matter must be remanded for additional proceedings in order to remedy the ALJ's erroneous assessment of Plaintiff's subjective symptoms. *See supra*. Accordingly, on remand, the ALJ shall also reconsider Plaintiff's RFC,[2] taking into consideration the opinions of the medical professionals noted above, as well as any additional or supplemental evidence relevant to Plaintiff's claim for disability benefits.

## CONCLUSION

Plaintiff argues the ALJ's decision should be reversed and remanded for the payment of benefits. ECF No. 13 at 20. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

The ALJ clearly erred with respect to her consideration of Plaintiff's testimony; therefore, Plaintiff's subjective symptoms must be reassessed on remand. On remand, the ALJ shall reconsider Plaintiff's statements and testimony and reassess what statements, if any, are not credible and, if deemed not credible,

---

[2]It is the responsibility of the ALJ, not this Court, to make an RFC determination. SSR 96-5p.

what specific evidence undermines those statements.  The ALJ shall also reconsider the opinions of the medical professionals noted above, as well as any additional or supplemental evidence relevant to Plaintiff's claim for disability benefits.  The ALJ shall reevaluate Plaintiff's subjective complaints, formulate a new RFC determination, obtain supplemental testimony from a vocational expert, if necessary, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED IN PART**.

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED August 6, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE